■■■ In the Matter of JOEL RIFKIN, Appellant, v GLENN S. GOORD, as Commissioner of New York State Department of Correctional Services, Respondent. [709 NYS2d 739] —Judgment unanimously affirmed without costs. Memorandum: In this CPLR article 78 proceeding converted by Supreme Court into a declaratory judgment action, petitioner, an inmate, challenges the constitutionality of his placement in administrative segregation, a more restrictive placement than the protective custody for which he is eligible (*see,* 7 NYCRR 301.4 [a], [b]; 330.2 [a]). The prison authorities removed petitioner from the general prison population based on their determination that

the notoriety and serious nature of petitioner's convictions caused disruption in the facility and that the removal of petitioner from the general prison population was required for the security of the facility and the safety of petitioner. Petitioner filed a grievance with respect to his placement status, contending that he is entitled to protective custody rather than administrative segregation. The Hearing Officer determined that, because protective custody required contact with approximately 40 inmates, petitioner's placement in administrative segregation rather than protective custody would promote prison security and the safety of petitioner by limiting his exposure to other inmates. That determination was upheld on administrative appeal and relied upon by the court in declaring that petitioner's constitutional rights are not violated as a result of the placement in administrative segregation. We affirm.

" '[A] prison's internal security is peculiarly a matter normally left to the discretion of prison administrators.' In assessing the seriousness of a threat to institutional security prison administrators necessarily draw on more than the specific facts surrounding a particular incident; instead, they must consider the character of the inmates confined in the institution, recent and longstanding relations between prisoners and guards, prisoners *inter se* and the like. In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context * * * turns largely on 'purely subjective evaluations and on predictions of future behavior' " (*Hewitt v Helms*, 459 US 460, 474).

We reject the contention of petitioner that the more restrictive placement violates his right to equal protection. "Equal protection does not require absolute equality * * * or precisely equal advantages. Rather, in the absence of a classification affecting fundamental rights or creating suspect classifications which must be invalidated unless justified by some compelling State interest, equal protection requires only that a classification which results in unequal treatment rationally further 'some legitimate, articulated state purpose' " (*Matter of Doe v Coughlin*, 71 NY2d 48, 56, *rearg denied* 70 NY2d 1002, quoting *McGinnis v Royster*, 410 US 263, 270). The prison authorities demonstrated a rational basis for the classification (*see, Smith v Coughlin*, 748 F2d 783, 787-788), i.e., that limited exposure

to other inmates was necessary to promote prison security and to protect petitioner.

We also reject the contention of petitioner that his placement in administrative segregation constitutes cruel and unusual punishment. " 'Segregated confinement involving neither intolerable isolation nor inadequate food, heat, sanitation, lighting or bedding, does not fall within the * * * category' of conduct so below civilized norms as to be cruel and unusual punishment no matter what its provocation" (*Jackson v Meachum*, 699 F2d 578, 582, quoting *O'Brien v Moriarty*, 489 F2d 941, 944).

Finally, we reject the contention of petitioner that his due process rights have been violated because he is subject to the same restrictions as those inmates placed in the special housing unit for disciplinary purposes. With respect to petitioner's substantive due process rights, petitioner's placement in administrative segregation does not "trigger[ ] due process protection" because that "segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest" (*Sandin v Conner,* 515 US 472, 485-486). With respect to petitioner's procedural due process rights, the administrative segregation was imposed and continues with the proper exercise of procedural due process; the placement of petitioner was the subject of an administrative hearing and his status is subject to review every 30 days by a three-member committee, the results of which review are forwarded to the prison's superintendent for a final determination (*see,* 7 NYCRR 301.4 [a], [d]). (Appeal from Judgment of Supreme Court, Wyoming County, Dadd, J.—Declaratory Judgment.) Present—Pine, J. P., Hayes, Wisner, Scudder and Kehoe, JJ.